# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

THERESE M. KIERL-ALLEN,            )
                                   )
       Plaintiff,              )
                                   )
v.                                 )      Case No. CIV-18-1140-D
                                   )
THE SALVATION ARMY                 )
ARKANSAS/OKLAHOMA DIVISION,        )
                                   )
       Defendant.              )

## <u>ORDER</u>

Before the Court are cross-motions for summary judgment filed by Defendant, the

Salvation Army Arkansas/Oklahoma Division (TSA), [Doc. No. 56] and Plaintiff Therese

M. Kierl-Allen [Doc. No. 55]. Both motions are fully briefed and at issue. *See* Pl.'s Resp.

Br. [Doc. No. 63]; Def.'s Reply Br. [Doc. No. 66]. *See also* Def.'s Resp. Br. [Doc. No. 62];

Pl.'s Reply Br. [Doc. No. 67].[1]

Plaintiff was an employee of TSA for four years. She was terminated from

employment on November 10, 2017. TSA asserts that Plaintiff's termination was due to

her violation of the Fair Labor Standards Act (FLSA) and the "accumulation of ongoing

performance deficiencies." Plaintiff alleges she was discriminated against because of her

disability or her son's disabilities and that TSA unlawfully retaliated against her for

submitting a written complaint of disability and gender discrimination. Her claims arise

---

[1] Also before the Court is Plaintiff's Motion for Leave to File Sur-Reply in Opposition to Defendant's Motion for Summary Judgment [Doc. No. 68]. Defendant responded in opposition [Doc. No. 69], to which Plaintiff replied [Doc. No. 70]. The Court finds that a sur-reply is unnecessary. As such, that Motion [Doc. No. 68] is **DENIED.**

under federal and state civil rights statutes, specifically the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, Title VII of the Civil Rights Act of 1964 as amended (Title VII), 42 U.S.C. § 2000e *et seq.*, and the Oklahoma Anti-Discrimination Act (OADA), Okla. Stat. tit. 25, §§ 1101 *et seq.*

## STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the facts and evidence are such that a reasonable juror could return a verdict for either party. *Id.* All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id.*

A movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see* FED. R. CIV. P. 56(c)(1)(A).

"Cross-motions for summary judgment are treated as two individual motions for

summary judgment and held to the same standard, with each motion viewed in the light most favorable to its nonmoving party." *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019). When the parties file cross motions for summary judgment, the Court is entitled to assume "'no evidence needs to be considered other than that filed by the parties.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (citation omitted).

## FACTUAL BACKGROUND

Plaintiff began employment with TSA in August 2013 as a Divisional Human Resources Manager at TSA's Arkansas-Oklahoma Divisional Headquarters in Oklahoma City. She has been a human resources professional since 1988 and has multiple professional human resources certifications. Plaintiff considers herself a seasoned human resources professional ranking in the upper echelon of human resources professionals in Oklahoma City. As such, she is familiar with the interactive process of the ADA and understands what it requires.

Employees at TSA are managed by clergy members called officers, who have primary disciplinary authority over the employees under their command. For most of Plaintiff's time at TSA, her direct supervisor was Major Janice Riefer. Plaintiff's supervisor for the final five months of her employment was Major Thomas McWilliams. Plaintiff also had subordinate employees. When Plaintiff started at TSA, she requested flexibility on her start time to attend to the needs of her son who has ADHD and Tourette Syndrome. Around May 2017, Plaintiff informed Riefer that she was seeing a counselor for depression.

As a Human Resources Director, Plaintiff's job responsibilities included implementing and interpreting TSA's policies within the division. In early 2017, TSA commenced a project to complete the transition of its payroll program to a payroll system provided by Ceridian, a human resources software company. TSA appointed Plaintiff as the Team Lead for the human resources side of the transition. This meant she was required to work closely with the finance department. The arraignment turned out to be problematic because Plaintiff had pre-existing interpersonal conflicts with employees in the finance department. Those conflicts continued, and they threatened the progress of the Ceridian project.

Plaintiff admits she felt overwhelmed by the complexities of implementing the transition to the Ceridian system; she attributes this to her depression and to her son's disabilities. Plaintiff's struggles hindered the Ceridian project's progress, and TSA eventually removed her from her role as Team Lead in May 2017. When Riefer met with Plaintiff to inform her of this decision, Plaintiff walked out of the meeting. Riefer later issued Plaintiff a written disciplinary action for insubordination because she walked out of the meeting and did not return when asked. Plaintiff apologized for her conduct and attributed it to her depression, although she expressly stated she was not seeking an accommodation.

In June 2017, Riefer conducted Plaintiff's yearly performance evaluation. [Doc. No. 63-9]. Although Riefer gave Plaintiff a satisfactory overall rating, Riefer rated Plaintiff as below expectations in some categories, in part because of Plaintiff's struggle to manage competing demands and because Riefer thought Plaintiff did not react well under pressure.

*Id.* Riefer also stated that Plaintiff's performance advanced a "successful HR contribution to Ceridian." *Id.* This performance evaluation qualified Plaintiff for a merit raise.

After McWilliams took over Riefer's role as Plaintiff's supervisor, TSA discovered that some employees under Plaintiff's supervision were working off the clock, potentially in violation of the FLSA, to complete tasks related to the Ceridian project. One of Plaintiff's subordinates submitted a complaint alleging that Plaintiff frequently called and texted her after work hours and on weekends. McWilliams reviewed the complaint and documentation submitted by the employee, and he contacted Connie Dunn, a human resources employee at TSA's Territorial Headquarters in Atlanta, Georgia, for guidance on the issue. Dunn told McWilliams that Plaintiff's conduct was egregious and constituted a terminable offense. Later that day, October 17, 2017, Plaintiff was suspended pending Dunn's investigation.

On November 9, 2017, Dunn completed her investigation and submitted a summary of her findings to McWilliams. [Doc. No. 56-27]. In that summary, Dunn found that a possible FLSA violation occurred under Plaintiff's supervision and that Plaintiff was negligent in her duties. Dunn recommended Plaintiff be given a final written warning and placed on a performance improvement plan, and McWilliams supported her recommendations.

Later that same day, Plaintiff submitted a letter of complaint, asserting that TSA was discriminating against her based on her gender and disability. [Doc. No. 56-41]. She stated that she knew of several cases where male TSA officers were not disciplined for

allowing employees to work off the clock, and she included a table of these alleged incidents with her complaint.

On November 10, 2017, Dunn recommended Plaintiff's employment be terminated because she believed the discrimination complaint was based on false information. *See* Dunn Dep. 158:5–163:1. Dunn thought this because, like Plaintiff, she was an employee, not an officer. According to Dunn, employees were not privy to the records of disciplinary action taken against officers. Plaintiff asserts that the table she included with her complaint was based on her recollection.

Later on November 10, 2017, McWilliams decided to terminate Plaintiff's employment. In McWilliams's termination letter, he told Plaintiff the reason for her termination was her FLSA violation. He also mentioned Plaintiff's "continued performance deficiencies." Plaintiff's termination was effective November 13, 2017.

After her termination, Plaintiff conducted an extensive job search. She eventually accepted employment with Legend Energy Services (Legend) on June 30, 2018. TSA learned from discovery in this case that Plaintiff may have lied on her TSA job application about her employment history. Plaintiff told TSA she resigned from two previous positions. Evidence indicates, however, that Plaintiff may have been involuntarily terminated from both. TSA indisputably discovered this information on June 19, 2020. Plaintiff has stipulated that she "does not seek damages for wage loss for the period after July 30, 2018." Further, Plaintiff stipulates that she does not seek front pay or reinstatement.

## DISCUSSION

### A.     Plaintiff's Disability Discrimination Claim

A plaintiff who alleges discrimination may prove intentional discrimination through either direct evidence of discrimination, like oral or written statements on the part of a defendant showing a discriminatory motive, or indirect evidence of discrimination. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000). Plaintiff offers no direct evidence of discrimination and relies solely on circumstantial evidence to support her claims. Therefore, the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) governs. *See E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011); *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013).

Plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. If a prima facie case is successfully established, the burden then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 802–03. If Defendant provides such a reason, then the burden shifts back to Plaintiff to show that the proffered justification is merely a pretext for unlawful discrimination. *Id.* at 804.

#### 1.  Prima Facie Case

To establish a *prima facie* case of disability discrimination, Plaintiff "must show that, at the time [s]he was fired, (1) [s]he was a disabled person as defined by the ADA; (2) [s]he was qualified, with or without reasonable accommodation, to perform the essential functions of [her] job; and (3) [s]he was fired because of [her] disability." *See Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011); *accord Hawkins v.*

*Schwan's Home Serv., Inc.*, 778 F.3d 877, 883 (10th Cir. 2015). The first prong—whether Plaintiff was disabled—is not in dispute. TSA challenges Plaintiff's ability to establish only the second and third elements.

### a. Qualified for the Position

"The term 'qualified,' with respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education and other job related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m). Plaintiff contends she satisfies this element because she met the minimum qualifications for her position as a human resources manager and because she believed she was performing that role satisfactorily. Additionally, her final performance evaluation at TSA, which occurred after the start of the Ceridian project, shows that Plaintiff met her overall job expectations. This evaluation qualified her for a merit raise.

The ADA does not define "essential functions," but mandates that "consideration shall be given to the employer's judgment as to what functions of a job are essential." *See* 42 U.S.C. § 12111(8). Tenth Circuit case law incorporates implementing regulations that define the concept to mean "the fundamental job duties of the employment position" and that identify appropriate considerations. See *Adair v. City of Muskogee*, 823 F.3d 1297, 1307 (10th Cir. 2016) (quoting 29 C.F.R. § 1630.2(n)(1)). The applicable regulations provide:

> (3) Evidence of whether a particular function is essential includes, but is not limited to:

(i) The employer's judgment as to which functions are essential;
(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
(iii) The amount of time spent on the job performing the function;
(iv) The consequences of not requiring the incumbent to perform the function;
(v) The terms of a collective bargaining agreement;
(vi) The work experience of past incumbents in the job; and/or
(vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3). "Provided that any necessary job specification is job-related, uniformly enforced, and consistent with business necessity, the employer has a right to establish what a job is and what is required to perform it." *Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1262 (10th Cir. 2009) (internal quotations omitted); *accord E.E.O.C. v. Picture People, Inc.*, 684 F.3d 981, 986 (10th Cir. 2012). "Determining whether a particular function is essential is a factual inquiry." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1191 (10th Cir. 2003).

Defendant argues that Plaintiff's prima facie claim fails at this element because she cannot show she could perform essential job duties in connection with the Ceridian project. Although Plaintiff complained about the complexity of the project and, eventually, lost her role as lead on it due to the dissatisfaction of her superiors, she nonetheless received a positive performance evaluation, which states that she both met TSA's overall expectations and advanced a "successful HR contribution to Ceridian." Upon consideration of the facts and evidence presented, the Court finds that Plaintiff has demonstrated a genuine dispute of material fact regarding her ability to perform "essential functions" of her position as a human resources director. A reasonable inference from these facts is that Plaintiff was

adequately performing the essential functions of her position but TSA simply lost faith in Plaintiff's ability to lead the Ceridian project.

### b. Discrimination Based on Disability

Defendant also challenges Plaintiff's ability to establish the third element of a prima facie case that she was terminated because of her disability, commonly referred to as a "causation" element. *See Carter*, 662 F.3d at 1147. Defendant contends Plaintiff cannot establish a causal connection between Plaintiff's complaint of disability discrimination and the termination decision made one day later.

For proof of causation Plaintiff points out that her position was not eliminated, that non-disabled persons were not disciplined for similar violations of the FLSA and TSA policies, and that she was replaced in the position by someone who has not reported a disability. The status of Plaintiff's position after her discharge is irrelevant because TSA never contended the actual reason for Plaintiff's discharge was the elimination of her position. *See Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1166 n.8 (10th Cir. 2007) ("Indeed, where an employer contends the actual reason for termination in a discriminatory firing case is not elimination of the employee's position, but, rather, unsatisfactory conduct, the status of the employee's former position after his or her termination is irrelevant.") (quoting *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005)).

Still, despite Plaintiff's struggles, she received an overall satisfactory employment evaluation in June 2017, which qualified her for a merit-based raise. Later, after an investigation revealed possible FLSA violations regarding employees supervised by Plaintiff, Dunn and McWilliams initially resolved to give Plaintiff a final warning and

place her on a performance improvement plan. But the next day—one day after Plaintiff submitted her complaint of disability discrimination—they agreed she should be terminated. The only apparent additional information in the hands of Dunn and McWilliams at that point was Plaintiff's discrimination complaint. This temporal proximity between the complaint and the termination decision is "something that could both satisfy the third element of the prima facie case and lend support to the pretext analysis." *Tadlock v. Marshall Cty. HMA, LLC*, 603 F. App'x 693, 703 (10th Cir. 2015) (unpublished) (internal quotation omitted). In combination, this evidence minimally meets Plaintiff's burden to show she was terminated "under circumstances which give rise to an inference that the termination was based on her disability." *See Butler v. City of Prairie Village*, 172 F.3d 736, 748–49 (10th Cir. 1999) (internal quotation omitted). Viewing the record in the light most favorable to Plaintiff, as required by Rule 56, the Court thus finds that Plaintiff has presented sufficient facts to meet her burden at the prima facie stage—a burden that is "not onerous." *See id.*

The Court thus finds that Plaintiff has demonstrated the existence of a genuine dispute of material facts that precludes summary judgment on the ground that she cannot establish a prima facie case of disability discrimination.

### 2. Legitimate, Non-Discriminatory Reasons

The first reason for Plaintiff's termination given by TSA was Plaintiff's FLSA violations; this was the only specific reason TSA listed in the termination letter. The letter also mentioned "continued performance deficiencies," but McWilliams gave inconsistent testimony as to what that phrase meant. He first stated that the FLSA violations were the

only specific deficiencies he considered in making the termination decision. McWilliams Dep. 162:15–163:6. He also stated that if he had other reasons for Plaintiff's termination, he could have listed them in the letter. *Id.* at 163:10–15. But at other times in the deposition McWilliams stated that TSA considered reasons other than the FLSA violations in the termination decision. *See id.* at 104:20–106:8.

After Plaintiff filed her EEOC charge, TSA offered several new reasons for the termination. TSA explains that McWilliams made his termination decision based on an "accumulation" of ongoing performance deficiencies, such as: Plaintiff's impermissible communication with employees during her suspension, prior disciplinary action of Plaintiff for insubordination by her supervisor, TSA's dissatisfaction of Plaintiff's work on the Ceridian project and of her conflict with the finance department, Plaintiff's negative demeanor, and Plaintiff's improper changes to data in the Ceridian system.

These are all legitimate, non-discriminatory reasons for Plaintiff's termination. TSA has thus met its "exceedingly light" burden to produce a legitimate, non-discriminatory reason for the adverse employment action. *See C.R. England, Inc.*, 644 F.3d at 1043. The burden of proof therefore shifts back to Plaintiff to show these reasons are pretextual.

### 3. Proof of Pretext

Defendant asserts that Plaintiff cannot show its stated reasons for terminating her employment are pretextual. "A plaintiff can establish pretext by showing the defendant's proffered non-discriminatory explanations for its actions are so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude they are unworthy of belief." *Id.* at 1038–39 (internal quotations and alterations omitted); *see Foster v.*

*Mountain Coal Co.*, 830 F.3d 1178, 1194 (10th Cir. 2016). "A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir. 2007) (internal quotation omitted).

"[A]n employee must proffer evidence that shows each of the employer's justifications are pretextual," but "when the plaintiff casts substantial doubt on many of the employer's multiple reasons, the jury could reasonably find the employer lacks credibility." *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 814 (10th Cir. 2000). "'The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000)).

### a. The reason given in the termination letter

The termination letter listed one specific reason for Plaintiff's termination: her FLSA violations. Plaintiff was suspended pending Dunn's investigation of these potential FLSA violations. In her summary of the investigation, Dunn's initial recommendations regarding discipline for the violations were to give Plaintiff a final written warning and to place Plaintiff on a performance improvement plan. Dunn submitted her report to McWilliams, and he supported her recommendations. Later that day, Plaintiff submitted a letter of complaint, asserting that TSA was discriminating against her based on her gender and disability. The next day, Dunn changed her recommendation; she recommended Plaintiff's employment be terminated because she believed the discrimination complaint

was based on false information. McWilliams terminated Plaintiff's employment that day—just one day after Plaintiff submitted her complaint. A reasonable jury could conclude the change from giving Plaintiff a final warning to terminating her employment was motivated by a discriminatory purpose. There is thus sufficient evidence for the jury to find this proffered reason for Plaintiff's discharge is unworthy of credence.

### b.  The reasons proffered after Plaintiff's EEOC charge

TSA has not been consistent in its assertion of the additional nondiscriminatory reasons it proffered after Plaintiff's EEOC charge. In response to the charge, TSA listed several new reasons for the termination decision. These included Plaintiff missing deadlines, Plaintiff giving false reports on the progress of the Ceridian project, Plaintiff's attendance issues, and Plaintiff's abnormal working hours. TSA has abandoned all these reasons, and McWilliams denied considering them in his termination decision. TSA's response to the EEOC charge also mentions that parts of Plaintiff's final performance evaluation related to the Ceridian project were considered in the termination decision, but McWilliams did not review the evaluation before firing Plaintiff. McWilliams Dep. 93:6–10.

Plaintiff has cast doubt on many of TSA's remaining proffered reasons for firing her. One reason TSA still relies upon to justify Plaintiff's discharge is her inability to work with Ceridian. But in her final performance evaluation, Riefer stated that Plaintiff both met TSA's overall expectations and advanced a "successful HR contribution to Ceridian." All the reasons TSA gave for Plaintiff's termination were known to Dunn and McWilliams when they initially agreed to give Plaintiff a final warning: the disciplinary action Riefer

took against Plaintiff in May 2017 for insubordination and failure to follow instructions, Plaintiff's violation of her suspension by contacting other employees, Plaintiff's continued conflicts with the finance department, Plaintiff's alleged negative demeanor, and Plaintiff's alleged impermissible changes to data in the Ceridian system. Although Dunn and McWilliams knew of each of these and could have considered them in their initial decision to give Plaintiff a final warning, they were not given as reasons for her termination until months after the termination decision.

Upon consideration of the facts and evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has shown sufficient inconsistencies and weaknesses in TSA's explanation of the decision to terminate her employment that a jury could reasonably conclude Defendant's asserted reasons for the termination decision are pretextual and Plaintiff's disability was a determining factor. Thus, the Court finds that Plaintiff has sufficiently demonstrated the existence of a genuine dispute of material facts and that summary judgment is inappropriate on Plaintiff's disability discrimination claim.

**B.     Plaintiff's Disability Association Claim**

The parties agree that the only difference between Plaintiff's disability discrimination and disability association claims is that the latter is based on TSA's knowledge of her son's disability, rather than her own disability. To prove a prima facie case of associational discrimination, Plaintiff must establish that: (1) she was "qualified" for the job at the time of the adverse employment action; (2) she was subjected to an adverse employment action; (3) she was known by her employer at the time to have a relative or associate with a disability; and (4) the adverse action occurred under

circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision. *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1154 (10th Cir. 2008).

For purposes of Plaintiff's disability discrimination claim, the Court has already found that Plaintiff provided minimally sufficient evidence to meet her burden on each prima facie element; she now must establish that TSA knew of her son's disabilities. TSA does not dispute that it knew Plaintiff's son had ADHD and Tourette Syndrome, and in her written complaint of discrimination, Plaintiff stated she thought TSA was discriminating against her based on her son's disability. Dunn and McWilliams decided to fire Plaintiff the day after her written complaint. This evidence is minimally sufficient to establish the prima facie case for a disability association discrimination claim. Further, the Court has already found that Plaintiff provided sufficient evidence of pretext. Thus, the Court finds genuine disputes of material facts preclude summary judgment on Plaintiff's disability association discrimination claim.

## C.      **Plaintiff's Retaliation Claim**

Plaintiff claims TSA unlawfully retaliated against her by firing her for requesting an accommodation for her disability and submitting a written complaint of disability and gender discrimination in violation of the ADA, Title VII, and the OADA. The burden-shifting analysis of *McDonnell Douglas* applies to Plaintiff's retaliation claim. *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). Plaintiff abandoned her retaliation claim arising out of her request for accommodation. [Doc. No. 63 at p. 1]. The Court will thus examine TSA's termination of Plaintiff's employment as the sole adverse employment

action for purposes of determining whether TSA is entitled to judgment as matter of law on Plaintiff's retaliation claim.

### 1. Prima Facie Case

The prima facie elements for retaliation are the same under Title VII and the ADA. *See Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006) (applying the same elements of prima facie case to Title VII and ADA retaliation claims). To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in protected employee activity; (2) she was subjected to an adverse action by an employer either after or contemporaneous with the protected activity; and (3) there was a causal connection between the employee's activity and the employer's adverse action. *Morgan*, 108 F.3d at 1324. (citing *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 985 (10th Cir. 1996) (Title VII case)).

Plaintiff's claim clearly meets the first two elements, and TSA appears to concede that it meets the third. [Doc. No. 56 at p. 28]. A complaint of discrimination constitutes a protected activity for purposes of ADA and Title VII retaliation claims. *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004); *see Weil v. Carecore Nat., LLC*, 833 F. Supp. 2d 1289, 1295 (D. Colo. 2011). Further, "any reasonable employee would have found termination materially adverse." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006).

Plaintiff argues—and TSA concedes—that the close temporal proximity between Plaintiff's submission of her complaint and TSA's decision to fire her is sufficient to meet the causation requirement in ADA and Title VII retaliation claims. The Court agrees. The

Tenth Circuit has "repeatedly recognized temporal proximity between protected conduct and termination as relevant evidence of a causal connection sufficient to 'justify an inference of retaliatory motive.'" *Id.* (quoting *Haynes*, 456 F.3d at 1228). Plaintiff was fired one day after submitting her written complaint of disability and gender discrimination. This close temporal proximity is sufficient to establish the causation element. Plaintiff has thus established a prima facie case for retaliation under the ADA and Title VII, and the burden shifts to TSA to proffer a legitimate non-discriminatory reason for Plaintiff's termination.

### 2.  Legitimate, Non-Discriminatory Reasons

TSA invokes the same non-discriminatory reasons for Plaintiff's retaliation claim that it did for her disability discrimination claim; it thus has met its burden to produce a legitimate, non-discriminatory reason for Plaintiff's termination. Plaintiff must show a genuine dispute of material fact exists as to whether those reasons are pretextual—i.e., unworthy of belief.

### 3.  Proof of pretext

For her disability discrimination claim, Plaintiff succeeded in showing a genuine dispute of material fact that TSA's proffered reasons are pretextual, and her case that TSA's nondiscriminatory reasons for firing her are unworthy of belief is even stronger for her retaliation claim. While it is insufficient alone to prevent summary judgment, "[c]lose temporal proximity between the employee's complaint and the adverse employment action is a factor in determining whether the employer's proffered reason is a pretext for retaliation." *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000).

Before Plaintiff's complaint, Dunn and McWilliams were prepared to give her a final warning and place her on a performance improvement plan. But the next day—one day after Plaintiff submitted her complaint—they agreed she should be terminated. This, in combination with the other evidence Plaintiff offered to demonstrate pretext, sufficiently establishes a dispute of material fact as to pretext. Therefore, the Court finds that Plaintiff has presented sufficient evidence to preclude summary judgment on her ADA and Title VII retaliation claim.

**D.      Plaintiff's motion for summary judgment on TSA's defenses**

Plaintiff seeks summary judgment on four defenses asserted by TSA: (1) failure to mitigate damages, (2) after-acquired evidence, (3) unclean hands, and (4) equitable estoppel. *See* Def.'s Answer to Pl.'s Am. Compl. [Doc. No. 41 at pp. 5–7]. The Court will address the applicability of each defense, viewing all facts and reasonable inferences in the light most favorable to TSA.

**1.   Mitigation of Damages**

TSA has asserted as an affirmative defense to Plaintiff's claim for damages allegedly caused by the termination of her employment, that Plaintiff failed to mitigate her damages. It is well settled that TSA bears the burden of proving Plaintiff "did not exercise reasonable efforts to mitigate damages." *McClure v. Ind. Sch. Dist. No. 16*, 228 F.3d 1205, 1214 (10th Cir. 2000). To meet this burden, "'the [employer] must establish (1) that the damage suffered by plaintiff could have been avoided, i.e. that there were suitable positions available which plaintiff could have discovered and for which he was qualified; and (2)

that plaintiff failed to use reasonable care and diligence in seeking such a position.'" *Id.* (quoting *EEOC v. Sandia Corp.*, 639 F.2d 600, 627 (10th Cir. 1980)).

The termination of Plaintiff's employment at TSA became effective on November 13, 2017. On July 30, 2018, Plaintiff accepted an offer of employment with a new employer, Legend. TSA does not dispute that Plaintiff's mitigation efforts to find alternative employment between her termination from TSA and the date she accepted new employment were legally sufficient from a mitigation of damages perspective. TSA argues only that Plaintiff's duty to mitigate continues through trial.

But Plaintiff does not seek damages for lost wages for any period after she accepted her position at Legend. In her brief in support of her motion for summary judgment, Plaintiff stipulated that she "does not seek damages for wage loss for the period after July 30, 2018." Statements in briefs "'may be considered admissions at the court's discretion.'" *U.S. Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 833 n.4 (10th Cir. 2005) (quoting *Guidry v. Sheet Metal Workers Int'l Assoc.*, 10 F.3d 700, 716 (10th Cir. 1993)). The Court exercises that discretion and finds the stipulations made by Plaintiff regarding the damages she seeks are binding.

Since Plaintiff is bound by her stipulations, she is precluded from seeking damages for lost wages for the period after she accepted alternative employment. Thus, Plaintiff's employment history and job search efforts subsequent to July 30, 2018 would be immaterial to the issue of mitigation of damages. TSA conceded the very fact it must disprove to establish its mitigation defense: that Plaintiff exercised reasonable mitigation efforts after her termination. Plaintiff is thus entitled to summary judgment on this defense.

### 2.  After-Acquired Evidence

If TSA establishes the after-acquired evidence defense, Plaintiff's damages will be limited; she may not seek reinstatement, front pay, or backpay from the date the new information was discovered. *See McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 361–62. (1995). In *McKennon*, the Supreme Court held in a wrongful termination case that "after-acquired evidence of misconduct by the former employee during the time of employment, while not relieving the employer of liability, may be relevant to the issue of damages." *See Perkins v. Silver Mountain Sports Club & Spa, LLC*, 557 F.3d 1141, 1145 (10th Cir. 2009) (emphasis omitted); *see also Ricky v. Mapco, Inc.*, 50 F.3d 874, 876 (10th Cir. 1995) ("after-acquired evidence of misconduct cannot act as a complete bar to recovery in an [employment discrimination] action, but rather only affects the amount of damages an employee may recover"). The Tenth Circuit has stated that applying *McKennon* involves "a two step process":

> In applying *McKennon*, the district court considers a two-step process. First, the employer must establish "that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon*, 513 U.S. at 362–63, 115 S.Ct. 879; *see Ricky v. Mapco, Inc.*, 50 F.3d 874, 876 (10th Cir. 1995) (stating the employer must not only show that it was unaware of the misconduct at the time it terminated the employee, but that the misconduct was "serious enough to justify discharge" and that it would have discharged the employee had it known about the misconduct). Second, and only after an employer has met this initial showing, the after-acquired evidence may then be considered to limit the damages remedy available to the wrongfully terminated employee. *McKennon*, 513 U.S. at 362, 115 S.Ct. 879 ("The beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered.").

*Perkins*, 557 F.3d at 1145-46.

TSA seeks the benefit of the defense in this case based on evidence developed during discovery that shows Plaintiff may have lied on her TSA job application about her employment history. Specifically, evidence indicates Plaintiff told TSA she resigned from two previous positions when she was involuntarily terminated from both. TSA discovered this information on June 19, 2020.

Plaintiff's stipulation, that she "does not seek damages for wage loss for the period after July 30, 2018," is equally applicable to this defense. [Doc. No. 55 at 5]. Further, Plaintiff stipulates that she does not seek front pay or reinstatement. *Id.* Consequently, she has stipulated that she is not seeking reinstatement, front pay, or backpay for the period after the date TSA discovered that her responses on her job application were untrue. Therefore, the after-acquired evidence defense would have no bearing on either liability or damages; there is thus no reason for TSA to advance it at trial. Summary judgment on this defense is granted.[2]

### 3.  Unclean Hands and Equitable Estoppel

Plaintiff, citing *Millsapp v. McDonnell Douglas Corp.*, 368 F.3d 1246, 1258 (10th Cir. 2004), argues that since she is not seeking reinstatement, backpay should be considered a legal—rather than an equitable—remedy, to which equitable defenses are inapplicable. Although Courts have continually referred to backpay as an equitable remedy, the Tenth Circuit in *Millsapp* explained that in Title VII Congress "treated backpay as equitable only

---

[2] TSA asserts that Plaintiff sought summary judgment on the after-acquired defense to limit its ability to present evidence to the jury challenging Plaintiff's credibility. [Doc. No. 62 at 13]. The Court's ruling on the applicability of the defense is not a ruling on admissibility of evidence; that issue is better left for a motion in limine or for resolution at trial.

in the narrow sense that it allowed backpay to be awarded *together with* equitable relief." *Id.* (alterations and quotation marks omitted) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 218 n.4 (2002)). Title VII "permits an award of backpay together with reinstatement; and when a court orders such affirmative action, the relief may be characterized as equitable." *Id. But see Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 910 (10th Cir. 2004) ("A district court's decision to award back or front pay under the ADA is an equitable one.").

"Courts have been far from consistent in their treatment of whether backpay is to be treated as a legal or an equitable remedy, to be determined by the court or by the jury." *Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439, 1443 (10th Cir. 1988). "In general, the characterization of backpay as legal or equitable has been determined by whether the plaintiff has requested backpay as an adjunct to the equitable remedy of reinstatement, in which case it has been characterized as equitable." *Id.*

Since Plaintiff is not seeking reinstatement in this case, the Court will treat her claim for backpay as seeking legal, rather than equitable, relief. As such, the equitable defenses of unclean hands and equitable estoppel are inapplicable. Summary judgment is granted to Plaintiff on these defenses.

## CONCLUSION

For these reasons, the Court finds that genuine disputes of material facts preclude summary judgment on Plaintiff's disability discrimination, associational disability, and retaliation claims. The Court further finds that Plaintiff is entitled to summary judgment on

TSA's affirmative defenses of failure to mitigate damages, after-acquired evidence, unclean hands, and equitable estoppel.

    **IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 56] is **DENIED**, as set forth herein.

    **IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. No. 55] is **GRANTED**, as set forth herein.

    **IT IS SO ORDERED** this 30th day of September, 2021.

 

 

                                        TIMOTHY D. DeGIUSTI
                                        Chief United States District Judge